# UNITED STATES DISTRICT COURT EASTERN DISTRICT OF MISSOURI EASTERN DIVISION

| | | |
|---|---|---|
| **JACQUERE DORAN,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 4:21-CV-01006-SNLJ** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM AND ORDER

On August 10, 2021, Petitioner Jacquere Doran ("Doran") filed this Motion to Vacate, Set Aside or Correct Sentence pursuant to Title 28, United States Code, Section 2255. This Court then ordered the United States to show cause why the relief requested in Doran's motion should not be granted. Based on the reasons set forth below, this Court will dismiss Doran's claims as waived and procedurally barred or otherwise deny them without an evidentiary hearing because they fail as a matter of law.

## I.    PROCEDURAL HISTORY

On May 2, 2018, Doran was charged by a federal grand jury in one count: 1) felon in possession of a firearm in violation of Title 18, United States Code, Section 922(g)(1) ("Count One"). Case No. 4:18CR00365SNLJ; District Court Docket ("DCD") 1, 2. On September 13, 2018, Joel Schwartz entered his appearance on behalf of Doran. DCD 11.

## Guilty Plea Agreement

1

On April 4, 2019, Doran pleaded guilty to Count One of the indictment. DCD 38. Pursuant to the Guilty Plea Agreement (the "Agreement"), the parties agreed that the Base Offense Level would depend on Section 2K2.1(a) United States Sentencing Guidelines ("U.S.S.G.") range. DCD 38, ¶ 2. The parties also recommended that no Specific Offense Characteristics were applicable. *Id.*

However, both parties agreed to waive the right to appeal the non-sentencing issues. *Id.* at &7. Specifically, the parties agreed as follows:

### 7. <u>WAIVER OF POST-CONVICTION RIGHTS:</u>

 <u>A</u> <u>**Appeal:**</u> The defendant has been fully apprised by defense counsel of the Defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

  <u>**(i)**</u> <u>**Non-Sentencing Issues:**</u> The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea.

  <u>**(ii)**</u> <u>**Sentencing Issues:**</u> In the event the Court accepts the plea and, after determining a Sentencing Guidelines range, sentences the Defendant within or below that range, then, as part of this agreement, the Defendant hereby waives all rights to appeal all sentencing issues other than Criminal History as it affects the base offense level calculations. Similarly, the United States hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea and sentences the Defendant within or above the determined Sentencing Guidelines range.

 1. <u>**Habeas Corpus:**</u> The Defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

*Id.* at ¶ 7(A), (B).

During the change of plea hearing, this Court ensured that Doran understood the

2

contents of the Agreement:

> COURT: The lawyers have given me this written Guilty Plea Agreement consisting of 11 pages. I see that you and the lawyers signed it on page 11. Is that right?
>
> DEFENDANT: Yes, sir.
>
> COURT: Have you read the agreement?
>
> DEFENDANT: Indeed I have, sir.
>
> COURT: Have you gone over it in detail with your lawyer?
>
> DEFENDANT: Yes.
>
> COURT: Has he explained the contents of the agreement in detail to you?
>
> DEFENDANT: Yes, sir, he has.
>
> COURT: And do you understand the contents of the
>
> agreement? DEFENDANT: I do, sir.
>
> COURT: Is there anything in here that you do not understand?
>
> DEFENDANT: I understand it completely.

Plea Hearing Transcript ("Plea Tr."), pp. 6-7.

This Court confirmed with Doran that he understood the specific terms of the Agreement, including the elements of the charges to which Doran was pleading guilty (Plea Tr. 15), the statutory penalties (Plea Tr. 11-12), and the sentencing guidelines (Plea Tr. 9-10). After confirming that Doran understood the possible consequences of pleading guilty, this Court accepted the Agreement, finding Doran "competent to enter the plea of guilty" and that his plea was being entered knowingly and voluntarily. *Id.* at 15. This

Court further asked defendant several questions which indicated that defendant was satisfied with his representation in the case:

> COURT: So with that in mind I'll ask you, are you satisfied with the way your lawyer has handled your case?
>
> DEFENDANT: Yes, sir, I am.
>
> COURT: Has he investigated the case to your satisfaction?
>
> DEFENDANT: Yes, sir, he has.
>
> COURT: Has he done everything you've asked him to do?
>
> DEFENDANT: Indeed.
>
> COURT: No gripes or complaints whatsoever?
>
> DEFENDANT: None. Not one -- not whatsoever.

Plea Tr. pp. 5.

## Presentence Investigation Report

Following the change of plea, the United States Probation Office issued its Final Presentence Investigation Report ("PSR"). DCD 44. The PSR attributed five prior felony offenses to Doran, including: a 2006 conviction for Carry Concealed Weapon in Vehicle with Prior Felony Conviction in Docket No. FCR233855 (¶ 37); a 2008 conviction for Evade Peace Officer: Disregard for Safety in Docket No. 08F00978 (¶ 40); a 2010 conviction for Evade Peace Officer: Disregard for Safety in Docket No. FCR275337 (¶ 42); a 2011 Threaten Crime with Intent to Terrorize with Prior Prison in Docket No. 11F05309 (¶ 43); a 2015 Possession of Marijuana for Sale under Docket No. 15F00530

4

(¶ 44). The PSR determined a Base Offense Level of 24, pursuant to U.S.S.G. Section 2K2.1(a)(2), because Doran had committed the offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense (Threaten Crime with Intent to Terrorize with Prior Prison under Docket No. 11F05309, and Possession of Marijuana for Sale under Docket No. 15F00530). *Id.* at ¶ 21. Three levels were then deducted under Section 3E1.1(a) and (b) for Doran's "acceptance of responsibility," resulting in a Total Offense Level of 21. *Id.* at ¶¶ 28-30.

With a Criminal History Category of VI and a Total Offense Level of 21, the PSR calculated an advisory guidelines range of 77 to 96 months. *Id.* at ¶ 76. On August 6, 2019, Doran filed his objections and memorandum in support of his objections to the PSR. DCD 46, 47. Doran argued that his prior felony conviction for Possession of Marijuana for Sale Docket No. 15F00530 did not qualify as a prior felony conviction for a controlled substance offense under U.S.S.G. Section 2K2.1(a) because it had been re-designated to a misdemeanor under California Law. Doc. 46. Doran also argued that his prior offense of Threaten Crime with Intent to Terrorize with Prior Prison under Docket No. 11F05309 did not qualify as a crime of violence under U.S.S.G. Section 2K2.1(a) because it did not have the element of intentional causation of death of great bodily injury. Doc. 47. On September 30, 2019, the United States filed its response in opposition to the objections. Doc. 55. On September 26, 2019, the Probation Office filed its Revised Final PSR, which outlined its position as to the enhancements under U.S.S.G. Section 2K2.1(a)(2). Doc. 53.

**<u>Sentencing</u>**

Doran appeared before this Court for sentencing on October 3, 2019. DCD 58. Before hearing argument on the objections, the Court started the hearing by reviewing the *Rehaif* Waiver that had been signed by Doran. <u>Doc. 59</u> (Waiver); S. Tr. p. 3. The Court then took up the objections to the PSR by Doran, explained its rationale, and denied the objections. <u>Doc. 58</u>; S. Tr., p. 4-6.    Doran was given an opportunity for allocution and argument, during which defense counsel requested a sentence at the low end of the guidelines. *Id.* at 11.   S. Tr., p. 18.  Ultimately, Judge Limbaugh sentenced Doran to a sentence of 96 months' imprisonment.    S. Tr., p. 21.

**<u>Appeal</u>**

On March 9, 2020, Doran appealed and argued that the District Court erred in treating his prior California conviction for sale of marijuana as a felony conviction and using it to enhance his base offense level pursuant to Sentencing Guidelines § 2K2.1(a)(2), because the state of California had redesignated the conviction as a misdemeanor offense. Brief of Appellant ("Doran Br."), p. 2. Doran further argued that the District Court had relied on Eighth Circuit precedent "wrongly decided" in finding that Doran's prior conviction under a threat statute was a crime of violence. *Id.* On May 7, 2020, the Government filed its responsive brief. On November 2, 2020, the Eighth Circuit affirmed the judgment of the District Court. *United States v. Doran*, (8th Cir. 2020).

## II.  PRINCIPLES GENERALLY APPLICABLE TO SECTION 2255 MOTIONS

"Section 2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) (en banc) (quotation omitted). And like habeas corpus, this statutory remedy "does not encompass all claimed errors in conviction and sentencing." *Id.* (quoting *United States v. Addonizio*, 442 U.S. 178, 185 (1979)). Under Section 2255(a), a petitioner may file a motion for post-conviction review on four specified grounds: "(1) 'that the sentence was imposed in violation of the Constitution or laws of the United States,' (2) 'that the court was without jurisdiction to impose such sentence,' (3) 'that the sentence was in excess of the maximum authorized by law,' and (4) that the sentence 'is otherwise subject to collateral attack.'" *Martin v. United States*, 150 F. Supp. 3d 1047, 1049 (W.D. Mo. 2015) (quoting *Hill v. United States*, 368 U.S. 424, 426–27 (1962)); *see also* R.  GOVERNING § 2255 PROCEEDINGS 1. The petitioner bears the burden of proof as to each asserted ground for relief. *Golinveaux v. United States*, 915 F.3d 564, 567 (8th Cir. 2019) (citation omitted).

"A petitioner is entitled to an evidentiary hearing on a Section 2255 motion unless 'the motion and the files and the records of the case conclusively show that [he] is entitled to no relief.'" *Holder v. United States*, 721 F.3d 979, 993 (8th Cir. 2013) (quoting 28 U.S.C. § 2255(b)). "No hearing is required where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *United States v. Anjulo-Lopez*, 541 F.3d 814, 817 (8th Cir. 2008) (quotation omitted). For

instance, "[a] district court need not hold an evidentiary hearing if the facts alleged, taken as true, would not justify relief." *Larson v. United States*, 905 F.2d 218, 221–22 (8th Cir. 1990) (citation omitted). Moreover, in conducting this inquiry, courts may not give weight to "conclusory allegations, self-interested characterizations, discredited inventions, or opprobrious epithets." *Simmons v. United States*, No. 1:16-CV-101 SNLJ, 2016 WL 5941929 (E.D. Mo. Oct. 13, 2016) (citation omitted); *see also Ford v. United States*, 917 F.3d 1015, 1026 (8th Cir. 2019) (reaffirming long-standing rule of dismissing allegations that "are contradicted by the record, inherently incredible, or conclusions rather than statements of fact."). In the ineffective-assistance context, a court "must consider the validity of a petitioner's allegation of ineffective assistance of counsel" in light of the record to determine whether an evidentiary hearing is necessary. *Holder*, 721 F.3d at 994 (quotation and internal alterations omitted); *Blankenship v. United States*, 159 F.3d 336, 337 (8th Cir. 1998).

"A defendant faces a heavy burden to establish ineffective assistance of counsel pursuant to Section 2255." *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000) (quotation omitted). Ineffective-assistance claims are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). "This standard requires [a petitioner] to show that his trial counsel's *performance* was so deficient as to fall below an objective standard of reasonable competence, and that the deficient performance *prejudiced* his defense." *Nave v. Delo*, 62 F.3d 1024, 1035 (8th Cir. 1995) (quotation omitted) (emphasis added). "Failure to satisfy either [the performance or prejudice] prong is fatal to the claim."

8

*Cole v. Roper*, 579 F. Supp. 2d 1246, 1263 (E.D. Mo. 2008) (citation omitted). Indeed, "[i]f the petitioner makes an insufficient showing on one component, the court need not address both components." *Kingsberry v. United States*, 202 F.3d 1030, 1032 (8th Cir. 2000).

Under the performance prong, courts "apply an objective standard [to] determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Nave*, 62 F.3d at 1035 (quotation omitted). In doing so, a court must be careful to "avoid the distorting effects of hindsight . . . by looking at the circumstances as they must have appeared to counsel at the time." *Rodela-Aguilar v. United States*, 596 F.3d 457, 461 (8th Cir. 2010) (citation omitted). The starting point for this analysis is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. (citation omitted). Counsel's strategic decisions "made after a thorough investigation of law and facts . . . are virtually unchallengeable," even if those decisions prove unwise. *Strickland*, 466 U.S. at 690.

Under the prejudice prong, the petitioner must show "a reasonable probability that, but for a counsel's unprofessional errors, the result of the proceeding would have been different." *Nave*, 62 F.3d at 1035 (quotation omitted). This inquiry depends on the likelihood of success if the alleged error were corrected. *Hill*, 474 U.S. at 59. "[I]f there is no reasonable probability that the motion would have been successful, [the movant] cannot prove prejudice." *DeRoo*, 223 F.3d at 925.

9

III.  **<u>ANALYSIS</u>**

Doran advances four grounds alleging ineffective assistance on the part of his retained attorney. Doran's grounds for post-conviction relief fall into four distinct categories: (1) counsel was ineffective when he incorrectly advised Doran about the essential elements of Title 18, U.S.C. § 922(g); (2) counsel was ineffective when he failed to seek either a downward departure or a variance based on Doran's prior state conviction being redesignated from a felony to a misdemeanor; (3) counsel was ineffective when he failed to seek a downward departure under Section 5K2.13 for diminished capacity or a downward variance based in Doran's Post-Traumatic Stress Disorder ("PTSD"); and (4) counsel was ineffective when he failed to file a motion to suppress evidence in the case.

As demonstrated in the subsections that follow, all of Doran's claims fail as a matter of law, are directly contradicted by the record, or both. Thus, this Court will deny his motion to vacate without a hearing.

1. **Counsel was not ineffective when he advised Doran about the essential elements of Title 18, U.S.C. § 922(g) at the time of his plea.**

Doran argues that his counsel was ineffective when he advised Doran incorrectly about the essential elements of Title 18, U.S.C. § 922(g) at the time of his plea.   Doran's Memorandum in Support ("Memo.") at 7. Counsel's performance wasn't defective for failing to anticipate a claim that wasn't recognized at the time of the plea and Doran can't establish prejudice because there's no likelihood he would have not pled guilty even if he had known about *Rehaif* at the time, as he later waived that issue. Even if *Rehaif* did impact the possession element, "there is no basis to find that [counsel] was

10

ineffective for failing to anticipate an argument that was successful [two] years [after the plea]." *United States v. Burley*, No. 4:15 CR 352, 2020 WL 2126682, *2 (N.D. Ohio May 5, 2020). In other words, this claim fails under *Strickland*'s performance prong because "failing to anticipate a change in the law . . . does not constitute ineffective assistance." *Parker v. Bowersox*, 188 F.3d 923, 929 (8th Cir. 1999). Doran's motion to vacate fails on the merits. [1]

Doran cites *Greer v. United States*, 141 S. Ct. 2090, (2021) to argue that he could make an adequate showing that he did not in fact know of his felony status at the time of his plea simply because one of his felony priors had been redesignated to a misdemeanor under California law. Memo. at 12. However, a close review of the PSR shows that Doran had been convicted of four other felonies and received felony sentences for them. PSR ¶¶ 37, 40, 42, 43, 44. Moreover, *Greer* considered what a defendant must show on direct appeal to show plain error, which is a less demanding standard than what Doran must show on collateral review. Nonetheless, Doran cannot even meet the standard in *Greer*. As the Supreme Court explained,

> To establish eligibility for plain-error relief, a defendant must satisfy three threshold requirements. *See Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904–1905 (2018). *First*, there must be an error. *Second*, the error must be plain. *Third*, the error must affect "substantial rights," which generally means that there must be "a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Id.* at 138 S. Ct. at 1904–1905 (internal quotation marks omitted). If those three requirements

---

[1] To the extent Doran challenges his indictment, that claim isn't cognizable on collateral review. *Houser v. United States*, 508 F.2d 509.514 (8th Cir. 1974) (defects in and sufficiency of indictment are not cognizable on collateral review).

are met, an appellate court may grant relief if it concludes that the error had a serious effect on "the fairness, integrity or public reputation of judicial proceedings." *Id.* (internal quotation marks omitted); *see also Olano*, 507 U.S. at 735–737.

*Greer*, 141 S. Ct. at 2096-97.

In *Greer*, the parties agreed that *Rehaif* errors occurred during both defendants' district court proceedings and that the errors were plain, thus satisfying the first two prongs of the plain- error test. *Greer*, 141 S. Ct. at 2097. The Court then addressed the third prong: whether the *Rehaif* errors affected the defendants' "substantial rights." *Id.* The second defendant in *Greer* had the burden of showing that, if the District Court had correctly advised him of the *mens rea* element of the offense, there was a "reasonable probability" that he would not have pled guilty. *Id.*

The Supreme Court undertook an analysis regarding felon in possession cases in general.

The Supreme Court stated:

> In a felon-in-possession case where the defendant was in fact a felon when he possessed firearms, the defendant faces an uphill climb in trying to satisfy the substantial-rights prong of the plain-error test based on an argument that he did not know he was a felon. The reason is simple: If a person is a felon, he ordinarily knows he is a felon. "Felony status is simply not the kind of thing that one forgets." 963 F.3d 420, 423 (4th Cir. 2020) (Wilkinson, J., concurring in denial of reh'g en banc). That simple truth is not lost upon juries. Thus, absent a reason to conclude otherwise, a jury will usually find that a defendant *knew* he was a felon based on the fact that he *was* a felon. A defendant considering whether to plead guilty would recognize as much and would likely factor that reality into the decision to plead guilty. In short, if a defendant was in fact a felon, it will be difficult for him to carry the burden on plain-error review of showing a "reasonable probability" that, but for the *Rehaif* error, the

12

outcome of the district court proceedings would have been different.

Of course, there may be cases in which a defendant who is a felon can make an adequate showing on appeal that he would have presented evidence in the district court that he did not in fact know he was a felon when he possessed firearms. *See* Fed. R. App. P. 10(e). Indeed, at oral argument, the Government conceded that there are circumstances in which a defendant might make such a showing. But if a defendant does not make such an argument or representation on appeal, the appellate court will have no reason to believe that the defendant would have presented such evidence to a jury, and thus no basis to conclude that there is a "reasonable probability" that the outcome would have been different absent the *Rehaif* error.

*Greer*, 141 S. Ct. at 2097 (internal citations omitted).

In conclusion, the Supreme Court found that the two defendants in *Greer* did not carry the burden of showing that the *Rehaif* errors in their respective cases affected their substantial rights. *Id.* at 2097. The Supreme Court looked to the fact that before their respective felon-in-possession offenses, both defendants had been convicted of multiple felonies and that those prior convictions are substantial evidence that they knew they were felons. *Id.* at 2097-98. Neither defendant ever disputed the fact of their prior convictions. *Id.* at 2098. The second defendant admitted that he was a felon when he pled guilty. *Id.* The Supreme Court found it important that, on appeal, neither defendant had argued or made a representation that they would have presented evidence at trial that they did not in fact know they were felons when they possessed firearms. *Id.* Therefore, the second defendant cannot show that, but for the *Rehaif* error during the plea colloquy, there is a reasonable probability that he would have gone to trial rather than plead guilty. *Id.* The Supreme Court ended with a quote from the Fifth Circuit where it aptly stated,

13

demonstrating prejudice under *Rehaif* "will be difficult for most convicted felons for one simple reason: Convicted felons typically know they're convicted felons." *Id.; (quoting United States v. Lavalais*, 960 F.3d 180, 184 (2020)).

Doran argues that counsel failed to correctly advise him of the elements of Section 922(g) during his case and at the time of his sentencing. Memo. at 7. This argument fails because *Rehaif* was not a required element at the time of Doran's plea, and Doran made a knowing waiver of that element at the time of his sentencing. Further, Doran clearly knew that he was a convicted felon at the time of his plea and sentencing, even if he intended to challenge the felony status of one of his five felony convictions. Doran argues that in his Exhibit A, which provides a text message chain between his girlfriend and defense counsel referencing *Rehaif*, Missouri state law, and carrying a firearm as a nonviolent offender, his attorney indicated that *Rehaif* did not apply to him. Memo. at 11. A closer reading of the text indicates that what defense counsel stated is true, that *Rehaif* says nothing about Missouri law, nonviolent offenders, or carrying a firearm as a nonviolent offender. Ex. A.

Importantly, a pre-plea PSR that was provided by the Probation Office in this case so that defense counsel could understand Doran's criminal history, clearly indicates that defendant was a multiple time convicted felon, but may be challenging the status of their particular enhancements as they coincide with federal law.

> COURT: . . . Now, we're not going to know that until after we conduct a presentence investigation and determine exactly what your criminal record is, if any. But if your criminal record is such that you fall under that

category, the total offense level will be higher and you would fall in the highest of the criminal history categories, which is a Category VI. You understand all that then?

MR. SCHWARTZ: Your Honor, if I may. We've discussed it thoroughly. We actually had a pre-plea PSR done just to cover that point. I think that's where the confusion may lie. I explained that it's still part of every Plea Agreement, just to let the Court be aware.

COURT: You understand?

DEFENDANT: Yes, sir.

COURT: Do you have any questions about it?

DEFENDANT: No, sir.

Pl. Tr. 10-11.

Even after the pre-plea PSR, many of Doran's other felony convictions were not challenged after the actual PSR was released. Rather, only one was challenged as a felony because it was redesignated under California law, and the other, while still a felony, was challenged as being a violent felony.

Further, Doran knowingly waived his right to be indicted by a Grand Jury at the time of his sentencing:

COURT: The first matter we need to take up, Mr. Doran, is that since you pled guilty back in April the United States Supreme Court has handed down an opinion which essentially added another element to the charge with which you're now charged. That is being a felon in possession of a firearm. This is kind of a technical change to the elements of the statute, but the point is that because of this change you have the right to send this case back to start over    and have a grand jury review the case. No felony case can proceed against you under the Constitution unless by way of an indictment handed down by a grand jury: Do you understand all  that?

15

DEFENDANT: Yes.

COURT: And so if you wish, we can start this case over, and you need to understand that it may be that the grand jury would decide not to indict you on this amended charge: Do you understand that too?

DEFENDANT: Can I step back and talk to my  lawyer?

COURT: Yeah. Let me tell you what the change is. There's only one simple change that the Supreme Court said that matters, and that is not only were you  in possession of a firearm, having been convicted of a felony at some earlier time, you also had to know that you had been convicted of a felony at some  other time. That's the only change. Do you understand that?

DEFENDANT: Yes.

COURT: Do you have any questions about it?

DEFENDANT: No.

COURT: Why don't you talk with your lawyer about it.

DEFENDANT: No. I don't have any questions.

COURT: Did I explain it sufficiently for you that you understand?

DEFENDANT: Yes.

COURT: So it's really kind of a technical change. Even though it's a technical change the case cannot proceed against you unless by way of a grand jury indictment: Do you understand that?

DEFENDANT: Uh-huh, yes, sir.

COURT: Have you had plenty of time to talk with your lawyer about this?

DEFENDANT: Yes, sir, I have.

COURT: Now, I've got this post plea waiver of indictment here, and I see that you and your lawyers have both signed it; is that right?

16

DEFENDANT:  Yes, sir.

COURT: And this is your free and voluntary decision to waive your right to be indicted by a grand jury?

DEFENDANT: Yes.

COURT: And so you want to go ahead and proceed with sentencing today then; is that right?

DEFENDANT: Yes, sir.

COURT: Any other questions?

DEFENDANT: No.

S. Tr., p. 3.

Further, Doran's argument that he believes he was not a felon fails. Although Doran couches his *Rehaif* argument in an ineffective-assistance claim, he suggests that he is "actually innocent of the 18 U.S.C. §922(g) offense" because he believed he was not a felon at the time of his possession of the firearm. Memo. at 14. Even overlooking procedural default, "[a] freestanding claim of actual innocence is not a recognized ground for federal habeas relief," and it is unclear how a "gateway claim" would be relevant here. *See Peck v. United States*, No. 4:15CV961 ERW, 2015 WL 5518745, at *2 n.1 (E.D. Mo. Sept. 17, 2015); *Golden v. United States*, No. C 12–4012–MWB, 2013 WL 452862, at *7–8 (Feb. 6, 2013 N.D. Iowa) (explaining the distinction between "gateway" and "freestanding" claims of actual innocence). In any event, Doran's "actual innocence claim lacks merit in light of his guilty plea." *See Chaney v. Steele*, No. 4:11-CV-715

17

CAS, 2014 WL 4801969 *5 (E.D. Mo. Sept. 23, 2014) (collecting cases). Indeed, Doran has not offered *any* "new reliable evidence" to undercut the repeated admissions leading up to his plea, much less show that "it is more likely than not that no reasonably juror would have found [him] guilty beyond a reasonable doubt." *See United States v. Sanchez-Maldonado*, No. CR04-4055-MWB, 2008 WL 4911853, *4–5 (N.D. Iowa Nov. 14, 2008) (quoting *House v. Bell*, 547 U.S. 518, 536–37 (2006)). Instead, Doran attempts to minimize these admissions by arguing that a guilty plea does not prevent the Government from presenting evidence to support the elements needed to convict him. Memo. at 15. But this argument, too, is directly forestalled by applicable precedent. In rejecting a similar actual-innocence claim, the Court explained: "When a defendant pleads guilty and does not go to trial, he relieves the government of its burden, making *Rehaif*'s holding irrelevant." *Goldsberry v. United States*, No. 4:19-CV-00950-AGF, 2020 WL 2085647, at *13 (E.D. Mo. Apr. 30, 2020). Thus, Doran's actual-innocence argument falls short for several independent reasons, and accordingly, his second ineffective-assistance claim fails however it is construed.

Under the performance prong, in light of all the circumstances, the identified acts or omissions were not outside the wide range of professionally competent assistance because counsel challenged what he believed were incorrect enhancements under the U.S.S.G. at the time of sentencing and on appeal. Docs. 46, 47. Further, for Doran to argue that counsel should have proceeded to trial based on a change of law in California as it relates to Doran's felony status is absurd. Even assuming this change in state law wiped

18

out this one prior felony, Doran had four other felony convictions that he knew about and did not challenge at any time during the plea, sentencing, or appellate proceedings. Defense counsel's performance did not fall under an objective standard of competent assistance.

Under the prejudice prong, Doran cannot show a reasonable probability that, but for a counsel's unprofessional errors, the result of the proceeding would have been different. This is because defense counsel provided accurate advice in Exhibit A to Doran's motion, in that *Rehaif* does not effect Missouri Law on non-violent offenders, and it is also is abundantly clear that defendant knew he was a multi-time felon at the time of his offense. As this Court stated at sentencing, "the thing is that you've got several felony convictions, and you're still carrying weapons. And I'm just very concerned about all that. Sent. Tr. at 20. Clearly, there was no mistake of counsel to correct and, therefore, no likelihood of success if the alleged error were corrected. Because there is no reasonable probability that the motion would have been successful, Doran cannot prove prejudice. The motion will be denied.

## 2. Counsel was not ineffective when he did not ask for a downward departure or a downward variance.

Doran next argues that defense counsel should have known that his argument regarding reclassification of a felony to a misdemeanor would lose at both the District Court and Eighth Circuit levels and, therefore, should have taken a different strategy to argue for a downward departure or variance. Specifically, Doran argues that defense counsel should have cited the commentary to § 4B1.1 of the U.S.S.G., which states:

> **Departure Provision for State Misdemeanors.--**In a case in which one or both of the defendant's "two prior felony convictions" is based on an offense that was classified as a misdemeanor at the time of sentencing for the instant federal offense, application of the career offender guideline may result in a guideline range that substantially overrepresents the seriousness of the defendant's criminal history or substantially overstates the seriousness of the instant offense. In such a case, a downward departure may be warranted without regard to the limitation in § 4A1.3(b)(3)(A).

U.S.S.G. § 4B1.1 cmt. n.4.

However, Doran fails to understand that this section is dedicated to offenders who have qualified as Career Offenders and, thus, have been subject to a significantly enhanced sentence on this basis. Due to Doran's offense of felon in possession, this provision is inapplicable to him, and therefore, the departure provisions contemplated are also inapposite. Under the performance prong, counsel could not have used this section to ask for a downward departure because the Career Offender enhancement did not apply in this case. "Counsel's failure to advance a meritless argument cannot constitute ineffective assistance." *Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994). Defense counsel would have had no basis by which to request this provision, especially given that firearms cases under Title 21, U.S.C. Section 922(g) do not trigger the Career Offender section. Defense counsel's performance, therefore, did not fall under an objective standard of competent assistance.

Under the prejudice prong, Doran cannot show a reasonable probability that, but for a counsel's unprofessional errors, the result of the proceeding would have been different. This is because the Court could not have granted a departure or variance

20

pursuant to note 4 of U.S.S.G. § 4B1.1, because it was neither used to enhance his sentencing guidelines, nor applicable in his underlying gun case. There was no likelihood of success if the alleged error were corrected because the Court would not have had precedent to grant a variance in a gun case based on the commentary to the Career Offender guidelines. Because there is no reasonable probability that the motion would have been successful, Doran cannot prove prejudice. The motion will be denied.

3. **Counsel was not ineffective when he failed to seek a downward departure under Section 5K2.13 for diminished capacity or a downward variance based in Doran's Post-Traumatic Stress Disorder ("PTSD").**

Doran argues for the first time in his 2255 Motion that counsel was ineffective when he failed to ask for a downward departure based on Section 5K2.13 for diminished capacity or a downward variance based on Doran's Post-Traumatic Stress Disorder ("PTSD"). Defendant's argument fails on the merits. Doran argues that he suffered from PTSD at the time of his offense due to a carjacking that took place the evening before he was stopped with the firearm, and, thus, counsel should have asked for a downward variance on that basis.

U.S.S.G., Section 5K2.13, states:

> A downward departure may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense. Similarly, if a departure is warranted under this policy statement, the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense.
> However, the court may not depart below the applicable guideline range if (1) the significantly reduced mental capacity was caused by the

21

> voluntary use of drugs or other intoxicants; (2) the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence; (3) the defendant's criminal history indicates a need to incarcerate the defendant to protect the public; or (4) the defendant has been convicted of an offense under chapter 71, 109A, 110, or 117, of title 18, United States Code.

U.S.S.G. § 5K2.13.

Application Note One to U.S.S.G. § 5K2.13, states that, "[f]or purposes of this policy statement, "[s]ignificantly reduced mental capacity" means the defendant, although convicted, has a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful." U.S.S.G. 5K2.13 (n. 1).

The courts, in general, have been reluctant to depart downward under § 5K2.13. *See United States v. Johnson*, 979 F.2d 396 (6th Cir. 1992) (Sixth Circuit vacated after the sentencing court departed downward based on the defendant's claim and psychologist's affidavit regarding "severe adjustment disorder."). To be entitled to downward sentencing departure based on diminished capacity, defendant must demonstrate that his or her significantly reduced mental capacity bears causal relationship to crime that consists of more than emotional weakness that leaves one open to suggestion; defendant must show inability to process information or to reason. *United States v. Withers*, 100 F.3d 1142 (4th Cir. 1996).

Defendant cites *United States v. Cantu*, 12 F.3d 1506, 1513 (9th Cir. 1993) for authority. However, a factual recitation of that case shows that the defendant there was

properly qualified for the departure based on military serviced in Vietnam that caused a significantly reduced mental capacity. In *Cantu*, it was undisputed that the defendant had post-traumatic stress disorder that effected his mental processes. *Id.* For example, the defendant had flashbacks to scenes of combat, suffered nightmares, "intrusive thoughts[,] and intrusive images," was anxious, depressed, full of rage, "markedly paranoid," and "explosive at times." *Id.* The expert doctor in that case also demonstrated unequivocally that defendant's condition impaired his emotional functioning to a significant extent, even causing him to be hospitalized for treatment for three and a half months in the year before his offense. *Id.* The court also found it significant that the defendant's condition interfered substantially with his ability to make reasoned decisions by causing him to fixate on weapons and rely on them for feelings of personal safety and security, making his impairment more than sufficient to make him eligible for a reduction in sentence under § 5K2.13. *Id.* Other courts have held that, even with PTSD, that the defendants' mental capacity was not significantly reduced for purposes of applying § 5K2.13 of the Sentencing Guidelines. *See Venezia v. United States*, <u>884 F. Supp. 919</u> (D.N.J. 1995) (defendant who suffered from a compulsive gambling disorder and post–traumatic stress disorder did not have a "significantly reduced mental capacity"). This Court clearly covered Doran's mental aptitude and fitness during the plea:

> COURT: How much education do you have?

> DEFENDANT: One semester in college and a high school graduation

> diploma. COURT: Are you in good health today?

DEFENDANT: Yes, sir, I am.

COURT: Have you had any drugs, medication, or alcohol in the last 24 hours?

DEFENDANT: I take Prozac.

COURT: Anything else?

DEFENDANT: No, sir.

COURT: Other than Prozac, do you have any other -- and I take it that's for

what?

DEFENDANT: PTSD, anxiety.

COURT: Okay. Other than that particular condition, that medication, do you have any other illnesses, infirmities, injuries of any kind that require a physician, a psychiatrist, or any other kind of doctor?

DEFENDANT: No, Your Honor.

COURT: Okay. Now tell me then about your PTSD. Are under the care of a physician for that?

DEFENDANT: A psychologist said that I -- that I had it and that I needed to take it from being shot multiple times.

COURT: From being what?

DEFENDANT: From being shot multiple times.

COURT: Okay. All right. So that's not a problem, is it? You don't have any physical problems from being shot, do you?

DEFENDANT: Not anymore, sir.

COURT: Yeah. So it's just mental?

DEFENDANT: Yes.

24

COURT: Okay. And so are you getting your medications as prescribed?

DEFENDANT: This morning, yes, sir.

COURT: Yeah. And are they working properly?

DEFENDANT: Yes, sir.

COURT: The reason I'm asking these questions, I have to be satisfied there's nothing about your physical or your mental condition that is in any way affecting your decision to enter this plea of guilty. Do you understand what I mean?

DEFENDANT: Yes, sir.

COURT: So can you assure me that's the case, there's nothing about your physical or mental condition that is affecting your decision; is that correct?

DEFENDANT: Indeed, yes, sir.

COURT: Okay. Thanks. Because this is a criminal case you're entitled to effective representation from a lawyer at each stage of the proceedings against you. Understand that?

DEFENDANT: Yes, sir.

COURT: So with that in mind I'll ask you, are you satisfied with the way your lawyer has handled your case?

DEFENDANT: Yes, sir, I am.

COURT: Has he investigated the case to your satisfaction?

DEFENDANT: Yes, sir, he has.

COURT: Has he done everything you've asked him to do?

DEFENDANT: Indeed.

COURT: No gripes or complaints whatsoever?

DEFENDANT: None. Not one -- not whatsoever.

Pl. Tr. at 3-5.

Doran also stated that he had PTSD "[d]ue to my injuries of being shot multiple times as an innocent bystander in California." Sent. Tr. at 12.

Doran's PTSD is far different than the conditions that warranted a downward departure in the cases discussed above. In particular, there is nothing to suggest that Doran's condition significantly impaired his ability as it relates to the commission of his decision to possess a firearm as a convicted felon. Further, based on all of the circumstances, the government would have objected to any departure requested in that Doran is unable to substantiate his impaired ability. Doran indicates that he was carjacked on the evening beforehand but provides no police report or other indicia of substantive proof. Further, defendant cannot establish that the event left him with the inability to process information or to reason, as required. Doran has not shown a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful."

U.S.S.G. § 5K2.13 (n. 1).

Under the performance prong, in light of all the circumstances, defense counsel's failure to ask for a downward variance based on § 5K2.13 of the Sentencing Guidelines was not outside the wide range of professionally competent assistance. While defendant mentioned to the Court at sentencing that he suffered from PTSD, there is nothing in the

record to indicate that Doran's mental capacity was significantly reduced. To the contrary,

Doran is the author and publisher of multiple books (Sent. Tr. at 13), owner of a

publishing company, has multiple studios (Sent. Tr. at 14), and produces music videos

(Sent. Tr. at 9). Additionally, Doran had been reading a criminology book and completed a

domestic violence class where he was the top of his class. (Sent. Tr. at 12). Clearly, Doran

did not suffer from a mental capacity that was significantly reduced due to PTSD.

Under the prejudice prong, Doran cannot show a reasonable probability that, but

for counsel's unprofessional errors, the result of the proceeding would have been

different. Even had the issue of PTSD been further explored by the Court, defendant can

make no showing of mental capacity that was significantly reduced. Doran has a plethora

of prior convictions and contact with law enforcement. He has found himself in the

criminal context due to his own actions for years. Therefore, there is no likelihood of

success if the alleged error were corrected, and defense counsel would have presented

additional evidence for a variance based on PTSD, that the sentence would have been

different. Because there is no reasonable probability that the motion would have been

successful, Doran cannot prove prejudice.

### 4. Trial counsel was not ineffective for failing to pursue a meritless motion to suppress the firearm that police found in the vehicle.

Even overlooking the issue of procedural default, Doran's final argument plainly

fails on the merits. Specifically, Doran contends that the firearm officers found in the

vehicle was recovered unlawfully because they did not have reasonable suspicion to stop

the vehicle. Memo. at 35. But this argument overlooks the automobile exception to the Fourth Amendment's general warrant requirement that justified a stop and search of the vehicle upon smelling marijuana emanating from the vehicle.  As articulated in the police report and agreed to in the statement  of facts of the Plea Agreement, not only did the officer smell marijuana from the vehicle that Doran was in, but he also found a significant quantity of marijuana in the back seat during his subsequent search. Agreement at & 4. "Counsel's failure to advance a meritless argument cannot constitute ineffective assistance." *Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994). Accordingly, Doran's first claim must be rejected, as the failure to raise a meritless argument cannot constitute ineffective assistance of counsel.

"When a defendant claims that counsel was ineffective by failing to litigate a Fourth Amendment challenge to a search and seizure, the defendant must prove that the claim is meritorious." *United States v. Luke*, 686 F.3d 600, 606 (8th Cir. 2012) (citation omitted). This requirement stems from both prongs of the *Strickland* test. *United States v. Bruce Johnson*, 707 F.2d 317, 323 (8th Cir. 1983). Regarding performance, "[c]ounsel is not ineffective for failing to pursue a motion to suppress that he reasonably believes would be futile." *Anderson v. United States*, 762 F.3d 787, 794 (8th Cir. 2014) (collecting cases). And a petitioner cannot show prejudice by raising a non-meritorious claim. *See McCloud v. United States*, No. 4:11-CV-1721 CAS, 2015 WL 224990, *19–20 (E.D. Mo. Jan. 15, 2015) (citing *DeRoo*, 223 F.3d 925).

Based on uncontroverted facts from both the Agreement and the PSR, SLMPD

officers had ample justification to conduct a warrantless search of the vehicle. Notwithstanding Doran's claim that there would be no evidence of a firearm at trial upon successful pretrial motions, *see* Memo. at 40, the officer articulated both a valid basis for the stop and that he observed Doran with a firearm on his person. DCD 38 at 3; PSR ¶ 13. Doran verified both of these facts while under oath at the plea hearing. Plea Hr'g Tr. at 12-15.

As to his argument that counsel failed to file pretrial motions regarding the stop of the vehicle due to the smell of marijuana, that ground was also waived at the time of the plea agreement.

> COURT: I'll turn over to page 7, paragraph 7 at the top, waiver of appeal and post- conviction rights. So paragraph A-1 addresses the non-sentencing issues. Under this provision you agree to waive or give up your right to bring an appeal in this case as to the non-sentencing issues; that is, to everything that has transpired in the case up to and through this guilty plea hearing this morning including all the rulings on all the pretrial motions. Do you agree?
>
> DEFENDANT: Yes, sir.
>
> . . .
>
> COURT: So the only thing you could appeal at that point would be the determination about your criminal history, that's your criminal record, if any, and nothing else. Understand?
>
> DEFENDANT: Yes, sir.

Pl. Tr. 8-9.

Doran clearly waived all claims regarding pretrial motions. Moreover, the Guilty Plea Agreement itself entails both parties' agreement to waive the right to appeal the

29

non-sentencing issues. <u>Doc. 38</u>, &7. Specifically, the parties agreed as follows:

### <u>7.</u> <u>WAIVER OF POST-CONVICTION RIGHTS:</u>

**<u>a</u>.** **<u>Appeal:</u>** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**<u>(1)</u>** **<u>Non-Sentencing Issues:</u>** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea.

*Id.* at ¶ 7(a).

Next, the United States must show that Doran entered the waiver of appeal knowingly and voluntarily. *McIntosh*, <u>492 F.3d at 959</u>. In making that determination, the Court looks to the circumstances surrounding the signing and entry of the plea agreement. *Michelsen*, <u>141 F.3d at</u> <u>871</u>. "Such circumstances may include 'the background, experience and conduct of the accused.'" *Id.* (quoting *United States v. Davis,* <u>954 F.2d</u> <u>182, 186</u> (4th Cir. 1992)).

Here, the waiver of appellate rights was part of a written plea agreement Doran signed. *See United States v. McIntosh*, <u>492 F.3d at 960</u> (emphasizing that the waiver was include in a signed plea agreement, when determining whether the waiver was knowing and voluntary). The Agreement specifically stated Doran was acting voluntarily:

### <u>10.</u>    <u>VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA</u> <u>AGREEMENT:</u>

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including the Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing

> anything in connection with any aspect of this case, including entering a
> plea of guilty.
>     The defendant acknowledges having voluntarily entered into both the
> plea agreement and the guilty plea. The defendant further acknowledges
> that this guilty plea is made of the defendant's own free will and that the
> defendant is, in fact, guilty.

Doc. 38, ¶ 10. With respect to the appellate waiver, the Agreement further provided that

Doran had been "fully apprised by defense counsel of the defendant's rights concerning

appeal and fully understands the right to appeal the sentence under Title 18, United States

Code, Section 3742." *Id.* at ¶ 7(A).

Furthermore, at the time of his change of plea, Doran was placed under oath. Plea

Tr., p. 3-4. After he took the oath, this Court asked Doran a series of questions in advance

of the plea. Doran responded that he was 35 years old; had attended some college

courses; was in good health; was not under the influence of drugs, other than prescribed

Prozac, or alcohol; that he was getting his medication as prescribed; that his medication

was working; that there was nothing about his physical or mental condition that would

affect his decision; and understood what he was doing that day. *Id.* at 4-6. He further

acknowledged that he had had enough time to discuss his case with his attorney and was

satisfied with his representation. *Id.* at 5. At the conclusion of its questioning, this Court

accepted the plea, finding that Doran was competent to enter the plea and did so "freely,

knowingly, and voluntarily." *Id*. at 15.

Based upon the record in the instant case, it is abundantly clear that Doran was fully

informed that by entering into the Agreement with the United States and changing his plea

to "guilty," he would waive any right to appeal any issues as to pretrial motions or issues with counsel. His waiver of appeal was made knowingly and voluntarily, inasmuch as he was advised of the waiver both orally and in writing, and also admitted to an understanding of, and agreement with, all of the terms of the Agreement with the United States. *See United States v. Boroughf*, 649 F.3d 887, 890 (8th Cir. 2011). Defendant's argument as to counsel's failure to file pretrial motions was waived pursuant to the plea agreement.  Defendant's motion will be denied on that basis.

Under the performance prong, in light of all the circumstances, defense counsel's failure to file pretrial motions was not outside the wide range of professionally competent assistance.   There is nothing in the record to indicate a substantive infraction on defendant's constitutional rights. Rather, the reports in the case recognize the consistent theory of the automobile exception. *See, e.g.*, *United States v. Mayfield*, 678 F. App'x 437, 439 (8th Cir. 2017) (per curiam) (We have repeatedly held that the odor of marijuana provides probable cause for a warrantless search of a vehicle under the automobile exception.).

Under the prejudice prong, Doran cannot show a reasonable probability that, but for counsel's failure to file pretrial motions, the result of the proceeding would have been different. As stated above, officers were well within the confines of the law when they stopped and searched the vehicle that defendant was in. Furthermore, officers located contraband in the vehicle that was attributable to defendant in that he was in actual possession of the firearm at issue. Therefore, there is no likelihood of success if the alleged

error were corrected and a pretrial motion was filed, that he would not have pled guilty or that his sentence would have been different. Importantly, had defendant filed a pretrial motion in the case, it would have necessitated preparation of witnesses for trial and, thus, defendant would not have received the full three points for acceptance due to lack of timely acceptance. Had defense counsel filed this meritless motion, defendant's ultimate sentence would likely have been higher, not lower. Because there is no reasonable probability that the motion would have been successful, Doran cannot prove prejudice, and thus, his claim also fails for this reason.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, this Court will deny Doran's § 2255 motion without an evidentiary hearing.

**IT IS FURTHER ORDERED** this Court will not issue a certificate of appealability because Doran has not made a substantial showing of the denial of federal constitutional right.

SO ORDERED this 21st day of December, 2021

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE